**JONES, et ux v. DOBKIN, et ux.**

**No. 74156.**

Civil Court of Record, Dade County.

July 28, 1959.

</div>

Matthews & Quinton, Miami, for plaintiffs.

Ernest J. London, Miami, for defendants.

HAL P. DEKLE, Judge.

This cause came on for trial before the court as a non-jury case on May 5, 1959. The testimony of the parties and their witnesses was heard and other evidence considered, at the conclusion of which the court announced its decision for the plaintiffs in the amount of $500, the amount for which they sued—this measure of any recovery was not controverted.

Plaintiffs did not immediately submit a form of judgment, and on May 8 plaintiffs' attorney served on opposing counsel, and on May 11 filed, a "Motion to Assess a Reasonable Attorney's Fee", with two supporting affidavits, and a separate "Motion for Entry of Judgment," noticing the same for hearing on May 27.

A substitution of counsel for defendants intervened, and on May 26 defendants' new counsel filed and served a "Motion to Dismiss Complaint or for Entry of Judgment in Favor of Defendants or for a New Trial, Rehearing or Taking of Additional Testimony," together with the affidavit of the defendant Julius Dobkin in support thereof.

At the hearing plaintiffs' counsel objected to defendants' motion for a new trial as not being within the ten days provided in rule 2.8 (b), rules of civil procedure. Defendants' new counsel argues that such time limitation applies only to jury verdicts.

The rule does, of course, use the wording "not later than ten days after the rendition of verdict," and at first blush it would seem that the court's pronouncement of its decision or "verdict" at the conclusion of testimony (the court's ruling not being deferred) would be the same as a verdict or "decision" by a jury, for certainly the court sits in the place and stead of a jury in such a non-jury trial as the trier of fact. It will be noted, however, that under the grounds for a new trial set forth in subsection (a) of the rule the last clause regarding trials without a jury mentions that in such cases—"The court may open the judgment, if one has been entered, take additional testimony, and direct the entry of a new judgment." The language, together with the absence of any clear delineation in subsection (b), seems to give a greater latitude to the court "sitting as a jury" over its "verdict" than prevails with respect to a jury's verdict, which is clearly covered in subsection (b). Also, State v. Auburndale (Fla.), 163 So. 698, indicates that the time would run from the date of filing of judgment in a non-jury case and, as first pointed out, no judgment here had been entered or filed. Plaintiffs' objection that the motion for a new trial was filed late is therefore overruled.

With respect to the merits of defendants' motion, counsel first urges that the deposit receipt contract (Coral Gables Board of Realtors Standard Form) upon which plaintiffs rely, is not a contract at all because the testimony of plaintiff by deposition shows, he argues, that the two witnesses affixed thereto were not in fact witnesses to the signatures of the plaintiffs as sellers and in particular were not "simultaneously present" when each plaintiff signed. The latter is of course not required. As to the affixing of the witnesses' signatures the testimony on such point may be fairly argued but the court is satisfied that it shows that the names constitute proper and valid witnesses.

Be that as it may, it is the court's further view that no witnesses are necessary in any event for an action such as this for the collection of damages. Counsel urges that such witnesses are

required because this is a contract for the sale of land. He fails to distinguish provisions of section 698.01, Florida Statutes 1957, which does so require on any instrument of *present* conveyance, and provisions of the Statute of Frauds, section 725.01, requiring "any contract *for* the sale of lands" to be evidenced "in writing" —making no mention of witnesses as in section 698.01. Lente v. Clark (Fla. 1886), 1 So. 149, 151, makes this distinction.

Counsel cites Petersen v. Brotman, Fla. App. 2d Dist. 1958, 100 So. 2d 821, as authority that a deposit receipt contract cannot be enforced without two subscribing witnesses but, of course, this case, like Abercrombie v. Eidschun (Fla. 1953), 66 So. 2d 875, also cited, is limited to specific performance, holding that equity will not compel specific performance where the instrument does not conform to the requirements of section 698.01. This is true because the instrument upon. which such performance, or compelled conveyance, is based would in that case be one of present conveyance under section 698.01. This does not mean that the same instrument cannot be enforced or sued upon as any contract, for *damages*. A more recent Second District case, Lord v. Die Polder (# 981, 6-19-59) not yet reported [113 So. 2d 440], holds a simple, unwitnessed, one sentence agreement for the sale of land to be a valid contract, enforceable for damages.

Defendants' counsel ably and correctly presents the further proposition that there must be a communication of an acceptance as a general rule. This is supported by Williston on Contracts, vol. 1, § 70, pp. 203, 4, with respect to bilateral contracts in which category this deposit receipt falls, being a promise for a promise. Also Corbin on Contracts, vol. 1, § 67, p. 206. These same authorities and further § 88 of Corbin, pp. 273, 4 and § 76 of Williston as well as the Restatement of Contracts, vol. 1, § 52, p. 58, point out, however, that the *mode* of acceptance may be prescribed by the offerors who in this instance were the defendants as buyers who submitted a signed contract for acceptance.

The deposit receipt in the last sentence as a separate paragraph provides—"These presents when approved and executed by the purchaser and the seller or the agent of either of them shall become a contract binding upon said parties."

There appears no reason for this provision unless it is to provide for the instrument becoming complete and binding immediately upon signing without further communication or action. This places the particular instrument here involved within the exception to the rule asserted by the defendants. A similar holding in this regard, though with an opposite result, is based in part on language

not as direct as here, in Shortridge v. Ohio (Mo. 1952), 253 S.W. 2d 838 at page 845.

Defendants' testimony dealt entirely with their contention that there was a revocation of their offer made to the real estate broker as plaintiffs' agent, before it was accepted. The broker denied any such communication and the court believed his testimony, particularly in view of the vacillating opposing testimony which was in conflict with defendants' own affidavit in the file—

> "That on Monday, October 8, 1956, at 9:30 o'clock in the morning, affiant, Zelia B. Dobkin, went to the First National Bank of Miami, on which bank the aforementioned check had been drawn, and ordered the bank to stop payment thereon, at which time affiant, Zelia B. Dobkin, saw Roy K. McCleskey in the said bank, attempting to cash the check of the affiants, contrary to his previous promise and agreement not to do so."

Such was not her testimony before the court. The testimony showed that in fact the broker did not bank there at all and the deposit slip for the check (pltf. ex. # 4) supports his testimony that it was deposited in his bank in Coral Gables and that he was not at the Miami bank.

It may be noted, moreover, with respect to the asserted revocation, that there is a typed provision, as follows—"This offer to be accepted on or before Tuesday, October 9, 1956, or the above deposit will be returned to buyers without deductions." This would seem to give the sellers (plaintiffs) until such date either to accept or reject the offer—and the alleged revocation on October 7 would be premature and ineffectual. The instrument being under seal would constitute consideration for such provision. Williston on Contracts, vol. 1, § 61, pp. 175-77.

Finally, defendants contend that no attorney's fee can be recovered because the plaintiffs' claim is for the "liquidated damages" mentioned in the default clause which fixed an amount certain. This language in the contract is in the alternative—that such liquidated damages be retained "and this contract shall be terminated, or the seller may at his option take legal steps to enforce this contract, in which event purchaser will pay reasonable attorney fees and court costs" (Emphasis added.)

It is contended that the term "enforce" in this alternative provision must be interpreted as meaning only in the event of a specific performance action literally to enforce the contract. The court does not share this strained interpretation of the language, even though the provision could have been set forth more clearly.

Where the defendants' own action in stopping payment on the check given in deposit was the motivation which necessitated enforcement of the contract by some legal action, such a wrongdoer should not be allowed thus to take advantage of his own wrongdoing. In any event, however, there can be no recovery of an attorney's fee for lack of proof thereof at the trial. It is true that affidavits thereafter filed attest to what a reasonable attorney's fee would be but in the absence of a stipulation for this, such proof comes too late to form a basis for such an award and therefore cannot be allowed.

The court adheres to its original "verdict" for the plaintiffs in the sum of $500 (no question having been raised as to this being the proper measure of damages if plaintiffs prevailed), and it is therefore ordered and adjudged that the plaintiffs Colin N. Jones and Alta I. Jones, his wife, do have and recover of and from the defendants, Julius Dobkin and Zelia B. Dobkin, his wife, the sum of $500, together with their costs in the amount of $47.25, for all of which let execution issue.