GERALD K. ANDERSON, District Attorney, Waupaca County
You have asked my opinion concerning appropriate criminal action in a number of situations involving watercraft anchored or moored longer than one day.
Before addressing your specific questions, I will set forth certain general assumptions limiting the fact situations to which my opinion will apply. I will also state certain general principles upon which that opinion relies.
First, my opinion relates only to navigable streams, and should not be considered to extend to lakes or nonnavigable streams. Second, I have assumed that the boat owner in each situation described by your questions is not the riparian owner of the lands immediately adjacent to the area in which the boat is moored or anchored. Third, I have assumed the owner of the riparian lands has not given permission to the boat owner to use his land, trees or any structure attached thereto or set thereon. *Page 602 
Understanding this opinion requires that we recognize certain general principles relating to the state's governmental trust in navigable waters. A riparian owner on a navigable stream normally holds title to the bed of the stream to its thread. Franzini v.Layland (1903), 120 Wis. 72, 81, 97 N.W. 499; Mayer v. Grueber
(1965), 29 Wis.2d 168, 138 N.W.2d 197. However, that title is qualified by the rights of the public resulting from the trust in our navigable waters. Muench v. Public Service Comm. (1952),261 Wis. 492, 502-503, 53 N.W.2d 514, 55 N.W.2d 40. While the trust was created for the benefit of all the state's citizens, the legislature authorized limited encroachments upon the beds of such waters where the public interest will be served. Hixon v.Public Service Comm. (1966), 32 Wis.2d 608, 146 N.W.2d 577. In that case, the court said at p. 618:
 "In all of these legislative authorizations of fill or structures on the beds of navigable waters, it was the function of the legislature to weigh all the relevant policy factors including the desire to preserve the natural beauty of our navigable waters, to obtain the fullest public use of such waters, including but not limited to navigation, and to provide for the convenience of riparian owners. . . ."
Public rights in navigable waters consist primarily of the right to navigation and to its incidents such as fishing, hunting, skating, swimming, and enjoyment of scenic beauty. Statev. Public Service Comm. (1957), 275 Wis. 112, 118, 81 N.W.2d 71. Riparian rights relate primarily to the use of waters in relation to the use of adjacent shores, for example the rights to pierage, wharfage, exclusive possession of the exposed bed of the navigable water, relictions and accretions, State ex rel. ChainO'Lakes P. Asso. v. Moses (1972), 53 Wis.2d 579, 582,193 N.W.2d 708; Doemel v. Jantz (1923), 180 Wis. 225, 193 N.W. 393. In contrast, public rights relate to the use of the waters themselves with only such use of the adjoining upland and river beds as is necessary to permit such use. Willow River Club v.Wade (1898), 100 Wis. 86, 101-102, 76 N.W. 273, 42 L.R.A. 305;Munninghoff v. Wisconsin Conservation Comm. (1949), 255 Wis. 252,38 N.W.2d 712; Olson v. Merrill (1877), 42 Wis. 203.
With the foregoing principles in mind, I will attempt to answer your questions in order. You first inquire what criminal action, if any, is appropriate where "a person, for a period of time longer than *Page 603 
one day, secures a boat/raft/shanty to a river bottom by means of anchors, pilings or poles placed there by himself or someone else, all of which is within the high water — including the normal river channel?"
Section 30.50 (1), Stats., provides:
 "`Boat' means every description of watercraft, other than a seaplane on the water, used or capable of being used as a means of transportation on water."
Accordingly, this opinion, when referring to boats, includes the various floating vessels referred to in your questions.
You do not indicate whether the "person" remains on board the boat during the time it is anchored, but it is assumed that your inquiry relates to those left unattended. If an unattended boat is attached to the bed of a navigable waterway for a period of time and in a manner which connotes permanency, e.g. spud poles, chain attached to cement filled drum or an object driven into the river bed, it would, in my opinion, be a prohibited "structure" in violation of sec. 30.12, Stats., and may also constitute an unlawful obstruction to navigation in violation of sec. 30.15. If the unattended and anchored boat is left on navigable water for an unreasonable length of time, it constitutes a violation of sec. 30.15. Since sec. 30.15 (3), Stats., provides that each day an obstruction to navigation exists constitutes a separate violation, it is likely that leaving such unattended and anchored boat for more than one day would prima facie be a violation.
Next, you ask what criminal action, if any, is appropriate if a person secures a boat (as defined in sec. 30.50 (1), Stats.), to trees growing on the river bottom between ordinary high water mark and the normal land, or to a dock or wharf projecting from shore beyond the high water mark in true effect, and owned by an adjoining landowner.
Securing a boat to a tree growing on the river bottom is a permitted use of the bottom, as is use of an anchor. Standing timber has always been considered part of the real estate. VanDoren v. Fenton (1905), 125 Wis. 147, 103 N.W. 228. However, the right to anchor a boat floating on navigable water does not extend to the use of a pier, wharf or dock without the consent of the riparian owner. *Page 604 
The riparian owner, of course, has the right to charge for the use of the pier, and use of such a structure without the owner's consent would constitute a trespass. In such a case, the riparian owner must look to the civil courts for redress.
It is imperative to note that a "boat" anchored for the purposes of allowing its occupants to fish, swim or otherwise sport upon the waterway is free from legal objection. So long as the craft is occupied it is difficult to credit any basis for legal objection thereto, whether the boat is anchored for one hour or one week. Only in the event the place and manner in which it is anchored should constitute an unreasonable obstruction to navigation could there be complaint. 65 C.J.S. Navigable Waters, sec. 44.
As pointed out in 56 Am. Jur., Waters, sec. 467, even a riparian owner may not interfere unreasonably with the public right of navigation in the exercise of his riparian rights. Surely, however, the riparian rights are greater than those who only exercise the rights of the public-at-large.
I would also observe that any riparian owner may charge a fee for the use of his lands in conjunction with the storage, moorage or anchorage of a boat on his premises. Riparian owners have a right to store, dock or anchor boats on their premises. The only authority of local municipalities to interfere with those rights are those set forth in sec. 30.77, Stats., where for purposes of health or safety there is a need for regulation of boats, their use or operation. There is no authority to require annual licenses or permits for such objects. Madison v. Tolzmann (1959),7 Wis.2d 570, 97 N.W.2d 513; Menzer v. Village of Elkhart Lake
(1971), 51 Wis.2d 70, 186 N.W.2d 290.
In summary I answer your questions by saying that any "boat" as defined in sec. 30.50 (1) may be used on rivers of the state for floating, fishing, swimming or any of the recognized incidents of navigation without charge or fee by any landowner or municipality. Use of the bottom is permitted for purposes of anchoring the boat while it is being used in connection with the exercise of the above-mentioned public rights. The use may also include such incidental utilization of the shore or bottom as tying to trees standing in or hanging over the water that can be reached from the boat, or driving of poles or piling for such anchor purposes. *Page 605 
Public rights in navigable waters do not extend to the use of privately owned uplands, or trees thereon, adjacent to the waters of the stream where such use requires entry upon these lands. Neither do public rights extend to privately owned structures such as wharves, piers, docks or buoys within or extending over a stream. Public rights do not permit anchorage in a waterway which unnecessarily or unreasonably impedes navigation of the stream by other craft.
Riparian owners have a right to tie up their boats when not in use to their own docks, piers or buoys, and may permit another to do so with or without charge. These riparian rights only exist so long as they do not unnecessarily or unreasonably conflict with the right of the public to use the stream.
Finally municipalities may not license or require permits for the exercise of any public right in navigable waters except where specifically authorized by statute. They may enact reasonable police power limitations upon the exercise of riparian rights. Such power may not be used to diminish the riparian owner's exercise of his public rights in navigable waters.
BCL:RBM