SALTER, J.
Marcum LLP, an accounting firm, appeals an order denying its request for a declaratory determination that the former spouse of the appellee could not assign her claims against the firm to the appel-lee.[1] We affirm the circuit court’s order, finding that (a) the disputes between Mrs. Potamkin and Marcum were subject in all respects to a written engagement letter requiring the resolution of disputes by arbitration, (b) the agreement itself does not expressly preclude assignment, and (c) Mr. Potamkin has commenced arbitration by filing a demand with the American Arbitration Association (AAA) based on the assignment and' certain alleged acts and omissions relating to the engagement letter. In affirming the order below prior to any award (or order of dismissal) in the arbitration proceeding, we defer to the AAA arbitrator for any determinations regarding the alleged assignability, breach, and damages to be determined pursuant to the demand. We express no opinion at this point regarding the merits of any of those issues.
The rights and obligations under the engagement letter between Mrs. Po-tamkin and Marcum are part of “a valid written agreement to arbitrate,” and the claim against Marcum, if asserted by Mrs. Potamkin, is “an arbitrable issue.” See Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999) (recognizing that there are three elements for courts to consider when ruling on a motion to compel arbitration: 1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitration has been waived). The third element of Seifert is also satisfied; neither Mrs. Potamkin nor Mr. Potamkin has waived the right to arbitrate.
With Mrs. Potamkin’s right to arbitrate her claims established, the next issue is whether her attempted assignment of the claims in arbitration to Mr. Potam-kin is prohibited as a matter of law and without regard to the underlying allegations, the applicability of a privilege, or some other set of circumstances that may be developed at a later point in the arbitration. Under Florida law, contract rights, including causes of action for breach, are freely assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy precludes assignment.[2] L.V. McClendon Kennels, Inc. v. Inv. Corp. of S. Fla., 490 So.2d 1374, 1375 (Fla. 3d DCA 1986). In the present case, Mar-cum argues that the second exception is applicable.
We disagree. Assignability and the characterization of the contract as involving “personal services” or a “confidential relationship” are matters for the arbitrators to decide on the record before them if the issues are presented to them. The engagement letter under which arbitration is sought concededly specifies that “fee disputes” as well as “malpractice claims” are to be arbitrated. Having failed to include a contractual provision prohibiting assignment by Mrs. Potamkin, or a provision specifying that an assignee could not *1195 assert a claim in arbitration, Marcum must submit any arguments on non-assignability in the specified forum, the AAA. “Gatekeeper” decisions on matters relating to a party’s standing to invoke arbitration are ordinarily within the jurisdiction of the arbitrators, not a court. See, e.g., Chi. Typographical Union No. 16 v. Chi Sun-Times, Inc., 860 F.2d 1420, 1424 (7th Cir.1988) (recognizing that the issue of standing is one for the arbitrator).[3]
Nor do we agree with Marcum’s assertion that the trial court should have considered whether Mr. and Mrs. Potamkin’s attempt to preserve any applicable accountant-client privilege [4] precludes the assignment, or that the “sword and shield” rule may require dismissal of the claim.[5] These are matters that the trial court did not decide, and that we have not decided, because Marcum agreed to arbitration in connection with claims relating to the engagement letter.
Finally, Marcum asks us to construe section 682.08(4), Florida Statutes (2010),[6] so as to interpret the term “party” to exclude a contracting party’s assignee. Marcum argues that the engagement letter was not between itself and Mr. Potam-kin, “the party causing the arbitration to be had.” Such a narrow reading would mean that assignees and their counter-parties under assigned contracts containing agreements to arbitrate disputes would lose their respective rights to compel arbitration, merely by virtue of the assignment. We discern no such intention in section 682.03(4) or any other provision of the Florida Arbitration Code.
Affirmed.

. The circuit court granted the appellee’s motion for judgment on the pleadings.

. To the extent that Mr. Potamkin’s claims in arbitration include tort claims, there are similar exceptions for "purely personal” injury claims and certain professional malpractice claims. Kozich v. Shahady, 702 So.2d 1289, 1290 (Fla. 4th DCA 1997); Ginsberg v. Lennar Fla. Holdings, Inc., 645 So.2d 490, 496 (Fla. 3d DCA 1994).

. Because the Federal Arbitration Act (FAA) is applicable nationally, it has produced more reported cases than the Florida cases applying the Florida Arbitration Code, Chapter 682, Florida Statutes. The federal cases are considered "highly persuasive” because the Code is modeled after the FAA. RDC Golf of Fla. I, Inc. v. Apostolicas, 925 So.2d 1082, 1091 (Fla. 5th DCA 2006).

. § 90.5055, Fla. Stat. (2010).

. § 90.510, Fla. Stat. (2010).

."On application the court may stay an arbitration proceeding commenced or about to be commenced, if it shall find that no agreement or provision for arbitration subject to this law exists between the party making the application and the party causing the arbitration to be had. The court shall summarily hear and determine the issue of the making of the agreement or provision and, according to its determination, shall grant or deny the application."