SMITH, Judge.
Columbia County Sheriff’s Office (Sheriff’s Office) appeals a final judgment determining that its contribution action against The Florida Department of Law Enforcement (FDLE) was time barred for failure to comply with the limitations provision in section 768.31(4)(d)2., Florida Statutes (1987).[1] We reverse.
The estate of Zdravko Stojanovic brought a wrongful death action against the Sheriff’s Office and its insurer, American Druggists’ Insurance Company, in federal court. FDLE was not a party to that lawsuit. Stojanovic was killed when he was struck by a motor vehicle operated by Dennis Kidd. It is alleged that the Sheriff’s Office, the City of Lake City Police Department, and FDLE were jointly engaged in an undercover operation designed and intended to combat the sale of illegal drugs in the Columbia County-Lake City area and as part of that operation, Dennis Kidd was recruited to act as a confidential source. It is alleged that Kidd struck and killed Stoja-novic while operating a motor vehicle in the furtherance of this undercover operation.
On September 6, 1983, in a telephone conference, Mr. Webb, an attorney who represented the Sheriff’s Office and its insurer, agreed with counsel for the estate, Mr. Gentry, to pay $100,000.00 to settle the wrongful death suit and to release the estate’s claims against the Sheriff’s Office, its insurer and FDLE, among others. The telephone conference agreement was preceded by a letter from Mr. Gentry in which he demanded that the insurance company tender its policy limits of $100,000.00 in settlement, otherwise the company would face potential liability for any excess judgment recovered against the insureds. By letter dated August 29, 1983, Mr. Gentry *236 modified his demand by setting a deadline of September 6, 1983, for a response. Hence, the September 6, 1983 telephone conference between counsel.
On September 9, 1983, Mr. Webb wrote to Mr. Gentry confirming the telephone conference agreement with Mr. Gentry, and reminding Gentry that releases would be required from the driver, Kidd, and the Florida Sheriffs Self-Insured Fund, as well as the other persons and entities mentioned in Gentry’s letter of September 7, 1983 to Webb. Mr. Webb’s September 9th letter also recited that he had written to his client requesting a settlement draft, which he would forward to Gentry along with appropriate releases and a stipulation for entry of an Order of Dismissal of the claims against American Druggists and its insureds.
Pursuant to the above communications, Mr. Webb again wrote to Mr. Gentry on September 23, 1983, enclosing the settlement draft and release forms to be signed by the Executor and Mr. Gentry. The letter contained the following instructions:
Per our telephone discussion earlier this week we understand that you will promptly proceed with the presentation of a motion for entry of an Order approving the settlement and authorizing the execution of this Release as well as the Dismissal with Prejudice of all claims against Kidd, American Druggists’ and Sheriffs Spradley and Bailey.
On September 23, 1983, a check from the insurer in the agreed upon amount was delivered to the attorney for the estate. A release discharging the Sheriffs Office and FDLE was signed by the estate’s executor on October 17, 1983. The settlement, which included proceeds for Stojanovic’s minor children, was officially approved by the federal court on October 25, 1983.
The Sheriff’s Office filed this contribution action against the City of Lake City Police Department and FDLE on October 8, 1984. The City of Lake City Police Department is no longer a party to this suit. The trial court entered a final judgment finding that this contribution action filed on October 8, 1984, more than one year after American Druggists’ agreed to discharge, and paid, the common liability the Sheriff's Office and FDLE owed to the estate, was time barred under section 768.31(4)(d)2.
The Sheriff’s Office’s cause of action against FDLE for a pro rata contribution is governed by the Uniform Contribution Among Tortfeasors Act, section 768.-31, et seq. Section 768.31(4)(d)2. requires a party who has satisfied a claim during the pendency of an action to both (1) fully pay the claim and (2) commence an action for contribution within one year after the agreement to discharge the common liability was made. Florida Patient’s Compensation Fund v. St. Paul Fire and Marine Insurance Co., 483 So.2d 770, 771 (Fla. 4th DCA), rev. den., 494 So.2d 1150 (Fla.1986). The issue in this case is when the “agreement” was made and the one year statute of limitations began to run. Relying on section 768.25, Florida Statutes (1987),[2] the Sheriff’s Office argues that until court approval of the settlement on October 25, 1983, there was no binding agreement which settled the estate’s claim against the Sheriff’s Office and FDLE, so that the limitations period could not begin to run until that date, making the Sheriff’s Office contribution suit filed on October 8, 1984, timely. We agree.
It is apparent that the trial court viewed the settlement proposal arrived at by correspondence and telephone conversations between counsel for the respective parties as satisfying the statutory requirement of section 768.31, which provides that the time for filing a suit to enforce contribution begins when the tortfeasor “agreed” to discharge the common liability. The trial court found that there was an “agreement” to discharge liability on September 6, 1983, the date of Mr. Webb’s telephone conference with Mr. Gentry. This finding, in our *237 judgment, gives an unwarranted legal effect to the negotiation and settlement discussions between counsel in this case. It also, in our opinion, requires that the statute be given a legal effect which we do not believe was intended.
As we view the issue, the question is when did an enforceable agreement for payment in return for discharge of the common liability occur? We first conclude that the exchange of correspondence and telephone calls between counsel for the plaintiff, and counsel for the appellant and its insurer, did not constitute an “agreement” within the statutory requirement. Under the express provisions of the statute, the executor of the decedent’s estate could not authorize plaintiff’s counsel to bind the plaintiff to a settlement figure without court approval, since the interests of minor beneficiaries were involved. Section 768.25, Florida Statutes (footnote 2, supra).
A plaintiffs attorney has no general authority, because of his status as attorney, to settle the litigation. The employment of an attorney does not, of itself, give the attorney authority to compromise the client’s cause of action or settle the client’s claim. Lechuga v. Flanigan’s Enterprises, Inc., 533 So.2d 856 (Fla. 3d DCA 1988); Sockolof v. Eden Point North Condominium Association, Inc., 421 So.2d 716 (Fla. 3d DCA 1982); and Rushing v. Garrett, 375 So.2d 903 (Fla. 1st DCA 1979).
It is clear that Gentry’s communications to counsel for appellant and its insurer, and counsel’s response, were settlement proposals. Gentry’s client was under no obligation to accept $100,000.00 in settlement —indeed, could not accept such a settlement—without court approval.
The carrier’s lawyer, Mr. Webb, communicated his proposal to settle in behalf of his client on monetary terms requested by Gentry. The basic terms of the agreement were outlined in their correspondence and telephone conversations, all of which preceded the actual tender of a settlement draft and releases to be signed by the executor. These were obviously preliminary steps, contemplated by each attorney, leading up to the request for settlement authority which had to be secured from the federal district court. The letter from Mr. Webb to Mr. Gentry dated September 23, 1983, specifically recognized the necessity of court approval authorizing acceptance of the tendered payment and execution of the release by the executor. A binding settlement could not occur until the court gave its approval. Cf., Albert v. Hoffman Electric Construction Co., 438 So.2d 1015 (Fla. 4th DCA 1983) (condition of attorneys’ in-court settlement agreement, that settlement was to be effective only if written settlement agreement was signed by absent defendant, was substantive, not procedural, and a binding settlement and compromise could occur only when party executed the agreement); Weitzman v. Bergman, 555 So.2d 448 (Fla. 4th DCA 1990) (error to enforce settlement reached by attorney for injured claimant and attorney for-insurance company through correspondence, when injured claimant later refused to sign settlement documents and challenged settlement on grounds that he did-not give attorney authority to settle case, and his attorney stated in affidavit that client’s acceptance of settlement had been conditioned on his wife’s consent).
It was impossible for the attorneys to make any agreement not taking into account the requirement for court approval. A valid, applicable statute becomes as much a part of a contract or agreement as if written therein. 11 Fla.Jur.2d, Contracts, § 129 (1979).
It is also well-settled that no agreement can bind one party and not the other. 11 Fla.Jur.2d, Contracts, § 15 (1979). Mr. Webb, on behalf of appellant and its carrier, could not unilaterally “agree” to discharge the common liability within the meaning of the statute, since no agreement whereby the executor of the estate could execute a release granting such discharge could be effective without court approval.
It is clear, therefore, that pursuant to the settlement negotiations between counsel, appellant’s carrier tendered a draft for $100,000.00 payable to the executor and the plaintiff’s attorney, together *238 with a release of all claims discharging the Sheriff’s Office and other potentially liable joint tortfeasors, including appellee. This action by the carrier was nothing more nor less than an offer of settlement. Until accepted, the mere issuance of the draft and delivery to plaintiff’s attorney could not effect an “agreement”. Neither could a discharge of the common tortfeasors be effected. Furthermore, the mere signing of the release by the executor did not effect such a discharge, because it required delivery in order to be effective. See, Travelers Insurance Co. v. Horton, 366 So.2d 1204 (Fla. 3d DCA 1979) (uninsured motorist had the right to proceed with arbitration where, although she did sign a release furnished by the insurer and was actually issued a draft, she neither presented the draft for payment nor returned the signed release to the insurer; and having failed to communicate her acceptance of the settlement by mailing the release to the insurer, uninsured motorist did. not bind herself to the terms of the proposed agreement of settlement).
The circumstances here are such that the executor was free, as was the uninsured motorist in Horton, supra, at any time to reject the tendered draft for $100,000.00, and to withhold delivery of the executed release, had the settlement been disapproved by the court, or had the executor decided for some reason not to request approval. Further, as a practical matter, it was impossible for appellant to know the amount it had to pay, in order to take the final step necessary to entitle it to contribution, until the court approved the settlement. Even if it be considered that a binding “agreement” occurred when the executor signed the release, since this event occurred less than a year prior to the time suit was filed, the action for contribution was timely.
REVERSED and REMANDED for further proceedings consistent with this opinion.
MINER and WOLF, JJ., concur.

. Section 768.31 (4)(d)2. provides:
If there is no judgment for the injury or wrongful death against the tortfeasor seeking contribution, his right of contribution is barred unless he has ...
Agreed, while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution.

. Section 768.25, requiring court approval of settlements in wrongful death actions, provides:
While an action under this act is pending, no settlement as to amount or apportionment among beneficiaries which is objected to by any survivor or which affects a survivor who is a minor or an incompetent shall be effective unless approved by the court.